**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| SANDRA FERNANDEZ, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|        v. | ) | CAUSE NO.: 2:06-CV-156 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Sandra Fernandez

on April 24, 2006, and a Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE

16], filed by Plaintiff on August 28, 2006.  Plaintiff seeks reversal and remand of the Administrative

Law Judge's decision denying Plaintiff's claim for Supplemental Security Income ("SSI").  For the

following reasons, the Court grants Plaintiff's Memorandum and remands this matter for further

proceedings consistent with this Order.

**PROCEDURAL BACKGROUND**

On May 5, 2000, Plaintiff filed an application for SSI, alleging disability since February

2000 due to ulcerative colitis, depression, and the after-effects of a broken ankle.  Plaintiff's

application was denied initially on September 11, 2000, and also upon reconsideration on January

2, 2001.  On January 15, 2001, Plaintiff filed a timely request for a hearing, which was held on

March 14, 2002, before Administrative Law Judge Helen G. Cropper ("the ALJ").  Plaintiff

appeared at the hearing and testified as did Vocational Expert ("VE"), Thomas Dunleavy.  Attorney

Edward Grossman represented Plaintiff at the hearing.  In a decision dated April 26, 2002, the ALJ

denied Plaintiff's application for SSI, finding that Plaintiff had the residual functional capacity

("RFC") to perform her past work or, in the alternative, to perform other jobs which exist in significant numbers in the national or regional economy.

Plaintiff filed a timely Request for Review with the Social Security Administration Appeals Council. The Appeals Council vacated the ALJ's decision and remanded the case to the ALJ with instructions to obtain additional evidence concerning Plaintiff's mental impairments, to further evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 C.F.R. § 416.920a, to document the application of the special technique in her decision with specific findings and appropriate rationale for each of the functional areas in 20 C.F.R. § 416.920a(c), to give further consideration to Plaintiff's maximum RFC, and if warranted, to obtain supplemental evidence from the VE to clarify the effect of the assessed limitations on Plaintiff's occupational base. The ALJ held the supplemental hearing on July 9, 2003. Plaintiff appeared at the hearing and was again represented by Attorney Edward Grossman. Plaintiff and VE Grace Gianforte testified.

In a decision dated February 24, 2004, the ALJ again denied Plaintiff's application for SSI, finding that Plaintiff had the RFC to perform her past work or, in the alternative, to perform other jobs that exist in significant numbers in the national or regional economy. The Appeals Council denied Plaintiff's request for review, making the ALJ's February 24, 2004, decision the final decision of the Commissioner.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## FACTS

### A.  Background

Plaintiff was 43 years old at the time of the ALJ's second decision (February 24, 2004).  She has a high school education.  Plaintiff's work experience includes jobs as a clerk, bartender, and cashier.  Plaintiff signed a statement, asserting that her health problems began in 1985, as a part of her application for benefits.

### B.  Medical evidence

In March 1997, Plaintiff was hospitalized at Saint Margaret Mercy Healthcare Center. Physicians diagnosed Plaintiff as suffering from severe ulcerative colitis;[1] acute exacerbation of chronic ulcerative colitis disease; severe anemia secondary to blood loss from colitis; sigmoid colon stricture; anal stenosis;[2] depression and anxiety; abnormally low amount of albumin, protein, alkaline phosphatase, cholesterol, and calcium in the blood; electrolyte imbalance; urinary tract infection with e-coli organism; and abnormal EKG.  Upon discharge, her physicians prescribed Prozac, Triniscon for anemia, folic acid, Asacol for ulcerative colitis, Floxin for infection, and Prednisone for swelling.  Records describe Plaintiff's emotional and physical condition upon discharge as "much improved."  R. at 209.  Her treating physician recommended that she seek further counseling from her pastor regarding her divorce and her depression.

In 1999 and 2000, Plaintiff was again diagnosed with ulcerative colitis and anemia.  In 2000, Plaintiff underwent a colonoscopy, performed by Dr. James Monks, which showed evidence of

---

[1] Ulcerative colitis is a "chronic disease of unknown cause characterized by ulceration of the colon and rectum, with rectal bleeding, mucosal crypt abscesses, inflammatory pseudopolyps, abdominal pain, and diarrhea; frequently causes anemia, hypoproteinmeia, and electrolyte imbalance, and is also less frequently complicated by peritonitis, toxic megacolon, or carcinoma of the colon."  Stedman's Medical Dictionary 408 (28th Ed. 2006).

[2] Anal stenosis refers to a stricture or narrowing of the anus. Stedman's Medical Dictionary 1832 (28th Ed.).

moderately active pancolitis, stricture, and findings consistent with ulcerative colitis.  In 2000, Plaintiff was also diagnosed with depression.  Physicians prescribed Prednisone, Asacol, Prozac, and Demerol.

1.      *Dr. Virginia C. Andrews*

On March 29, 2000, Plaintiff began seeing Dr. Virginia C. Andrews, Psy. D., a licensed clinical psychologist.  Plaintiff told Dr. Andrews that she was having problems related to her divorce.  Dr. Andrews expressed her view that Plaintiff needed to take time off from work and that she "would greatly benefit from a period away from job demands in order to deal with the issues of mental health."  R. at 340.  Dr. Andrews diagnosed Plaintiff with "major depression episode superimposed on ... generalized anxiety disorder."  R. at 338.

Dr. Andrews filled out a psychiatric report for the Illinois Disability Determination Service on July 30, 2000, after several treatment sessions with Plaintiff.  Dr. Andrews reported that Plaintiff had crying spells, pressured speech, and that Plaintiff experienced "extreme stress due to divorce and ... excessive job demands."  R. at 336.  Dr. Andrews opined that Plaintiff "is too depressed and anxious to function at her occupation."  R. at 338.

In a letter dated March 13, 2002, Dr. Andrews wrote that Plaintiff was involved in an individualized outpatient psychotherapy program and that she suffered from panic disorder with agoraphobia,[3] which "curtails her ability to function normally."  R. at 341.  Dr. Andrews went on to note that Plaintiff showed signs of progress, but she still needed "to build further coping mechanisms."  R. at 341.

---

[3]Agoraphobia is a "mental disorder characterized by an irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or are avoided; often associated with panic attacks." Stedman's Medical Dictionary 40 (28th Ed.).

2.      *State Agency physicians*

On August 21, 2000, State Agency physicians opined that Plaintiff suffered from "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." R. at 304. This mood disturbance was accompanied by depressive syndrome characterized by sleep disturbance, psychomotor agitation or retardation, and decreased energy. The State Agency physicians noted that Plaintiff had a slight functional limitation as to: restriction of activities of daily living and difficulties in maintaining social functioning. The physicians found that Plaintiff seldom had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere). Additionally, the physicians found that Plaintiff never experienced episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). The physicians also found Plaintiff to be moderately limited in her ability to maintain attention and concentration for extended periods, in her ability to work in coordination with or proximity to others without being distracted, and in her ability to respond appropriately to changes in the work setting. They also noted that Plaintiff was not significantly limited in her social interaction or in her understanding and memory.

3.      *Dr. Allan B. Nelson*

On August 6, 2001, Dr. Allan B. Nelson performed a consultative psychological examination of Plaintiff. Plaintiff stated that she had a history of ulcerative colitis, which manifested itself in a multitude of physical symptoms. She also stated that she was "moderately and occasionally severely depressed and anxious for about three years because of her physical problems and the limitations that they impose on her existence." R. at 326. Plaintiff reported that she experienced "frequent

5

crying spells, difficulty concentrating, a low frustration tolerance, chronic insomnia, [and] a poor

appetite ..."  R. at 326.  She also reported undergoing a significant social withdrawal.  Dr. Nelson

noted that Plaintiff was moderately depressed throughout the session and that Plaintiff showed no

signs of any formal thought disorders, memory impairments, or deficits in abstractive functioning.

Plaintiff displayed a very limited knowledge of current events.  Further, Dr. Nelson noted that

Plaintiff's judgment was relatively intact.

Dr. Nelson diagnosed Plaintiff with "[a]djustment disorder with mixed emotional features,

moderate."  R. at 320.  Dr. Nelson noted that Plaintiff's psychiatric prognosis was fair.  As a part

of the evaluation, Dr. Nelson completed a medical source statement of Plaintiff's ability to do work-

related mental activities.  On this form, Dr. Nelson opined that Plaintiff's ability to respond

appropriately to supervision, co-workers, and pressures in a work setting were affected by her

impairment.  Dr. Nelson opined that Plaintiff's ability to understand, remember, and carry out

instructions was not affected.  Dr. Nelson indicated on the form that Plaintiff was moderately limited

in her ability to interact appropriately with the public, supervisor(s), and co-workers, and to respond

appropriately to work pressures in a usual work setting.  Dr. Nelson opined that Plaintiff was slightly

limited in her ability to respond appropriately to changes in a routine work setting.

4.      *Dr. Mahim Vora*

On February 14, 2003, Mahim Vora, M.D., performed a consultative psychological

examination of Plaintiff.  Plaintiff reported to Dr. Vora that she "worries about anything and

everything and then starts feeling sad."  R. at 365.  Plaintiff reported that she suffered from

depression for five years and that when she got depressed, she remained depressed for about 45

minutes to an hour.  Plaintiff denied manic episodes but reported that she had difficulty

concentrating.  Plaintiff said that she could not work because her mind wanders and she cannot focus.

In her medical history, Dr. Vora noted that Plaintiff had been treated by Dr. Andrews, but had stopped seeing the Doctor due to lack of insurance.  Dr. Vora also noted that he reviewed the psychiatric report of Dr. Andrews, the psychiatric evaluation of Dr. Nelson, and the report of T. Low, Ph.D.  Dr. Vora found that Plaintiff was cooperative, her behavior was unremarkable, and she maintained good eye contact and normally productive and coherent speech.  He noted that her mood was normal and that she did not appear to be sad and did not cry.  He also noted that Plaintiff showed no signs of problems with cognitive functioning.  Dr. Vora diagnosed Plaintiff with a panic disorder with agoraphobia and an adjustment disorder with depression.

Dr. Vora completed a medical source statement of Plaintiff's ability to perform work-related mental activities.  Dr. Vora opined that Plaintiff's ability to understand, remember, and carry out instructions was not impaired, but that her nervousness, anxiousness, and depression, when around other people, resulted in a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting.

## C. Plaintiff's testimony at the remand hearing

At the remand hearing, Plaintiff testified that she had not worked since August 25, 2003, after she was fired from her job at an insurance company where she worked as a typist and processed car insurance payments.  Plaintiff stated that she lost her job because she refused to overcharge people and caught her boss engaging in inappropriate behavior in the workplace.  Plaintiff testified that she received unemployment compensation, but was unsure when those payments would cease. In order to receive unemployment benefits, Plaintiff reported to the unemployment office every two

weeks by telephone and certified that she was able and ready to work. At the time of the hearing, Plaintiff reported that she was able to work and was actively looking for work as a receptionist or in a customer service position.

With regard to her physical condition, Plaintiff testified that she experienced cramping in her right side due to colitis and this made it painful for her to walk and sit. Plaintiff testified that after getting a prescription for Asacol and Prednisone from her doctor, she experienced some improvement, but being upset or nervous continued to trigger her colitis. Plaintiff testified that she did not seek mental health treatment because she could not get health insurance. Plaintiff did not look into the availability of community mental health clinics. Plaintiff testified that her primary physician, Dr. Patel, prescribed Zoloft, an anti-depressant, which helped improve her condition after her divorce was final. Plaintiff explained that she had little success with Prozac and Paxil because of their adverse side-effects. Plaintiff testified that she did not go to shopping malls because crowded places made her uneasy, but she was comfortable in uncrowded, quiet movie theaters and restaurants.

Plaintiff testified that her daily routine included taking her children to and from school, cleaning the apartment, grocery shopping, meditating, preparing dinner, filling out job applications, walking, and relaxing. Also, she watered the grass and liked to go to the movies. She testified that she wanted to work but "when [she] start[s] working [she] works for a few weeks" and gets nervous. R. at 94.

### D.  VE's testimony[4]

In her first hypothetical question, the ALJ asked the VE to assume an individual with the same age, educational background, and past work experience of Plaintiff, who has the RFC to perform the full range of work at the light exertional level with the following exceptions and limitations: should never climb ladders, ropes, or scaffolds; should not be exposed to unprotected heights or unguarded hazardous equipment; and should not do work that would require her to squat to the floor.  The ALJ asked the VE to describe Plaintiff's past relevant work, from a vocational standpoint, before answering the hypothetical.  The VE responded that Plaintiff worked as a duplicating machine operator, cashier, bartender, scheduler, customer service clerk, receptionist and clerk, insurance policy processing clerk, and data entry clerk.

The VE testified as to what skill level Plaintiff's past work involved according to the U.S. Department of Labor in the Dictionary of Occupational Titles ("DOT").  The VE opined that duplicating machine operator and scheduler positions are unskilled; and that cashier in a grocery store, bartender, customer service clerk, receptionist clerk, insurance policy processor clerk, and data entry clerk positions are semi-skilled.  The VE noted that in January 1996, the Department of Labor reclassified cashiers, bartenders, customer service clerks, and receptionists as unskilled jobs.  The VE explained that Plaintiff's past relevant jobs had the following exertional levels: the duplicating machine operator, grocery store cashier, and bartender positions were at the light level; the scheduler, customer service clerk, receptionist clerk, insurance policy processing clerk, and data entry clerk positions were at the sedentary work level.  Returning to the first hypothetical question

---

[4]The testimony given by VE Thomas Dunleavy at the original hearing was not included in the administrative record.  Therefore the Court will summarize the testimony given by VE Grace Gianforte at the hearing on remand.

posed by the ALJ, the VE stated that there is nothing in the first hypothetical that would preclude the ability to do Plaintiff's past work.

The ALJ then asked, "[i]f in addition the person were moderately limited in the ability to respond appropriately to work pressures in a usual work setting, would that affect your opinion?" R. at 107.  The VE responded by stating that this limitation would impact cashiering, bartending, customer service work, receptionist work, and insurance policy processing work.  The VE went on to state that it would have less of an impact on the data entry, scheduling, and duplicating machine operator positions.

The ALJ then asked the VE if there were any other occupations that the hypothetical person would be better able to perform and sustain.  The VE stated that there is clerical work available that is associated with little interaction with others or superficial interaction.  These occupations include: bank statement clerk, surveillance monitor, mail sorter, library clerk,[5] advertising clerk, clerical checker, and clerical sorter.  The VE stated that at least 1,000 positions in each category of these occupations existed in the region.

The ALJ then asked what the effect would be if the hypothetical person were moderately limited in the ability to work in coordination or proximity to others without being distracted by them.  The VE replied that this moderate limitation would not have a great impact on unskilled work.  The VE stated that the occupations she previously listed required relatively little interaction with others.  The ALJ then asked what effect would occur if a moderate limitation in the ability to respond appropriately to changes in the work setting was added.  The VE stated that this moderate

---

[5]The VE noted that a library clerk does involve interaction with others, but the interaction is superficial and is limited to issuing library cards, handling book returns, book checkouts, and providing reference information.

limitation would impact semi-skilled and skilled work where judgment is required, there are decisions to be made, problems to be solved, and policies to be implemented.

Next, the ALJ added a moderate limitation in the ability to interact appropriately with the general public. The VE testified that the limitation would preclude work as a ticket taker. The ALJ then added a moderate limitation in the ability to interact appropriately with a supervisor and co-workers. The VE stated that this moderate limitation would have an impact on sustaining competitive employment. The VE opined that if a person is moderately limited in getting along with supervisors and co-workers, he or she will get six months to show improvement and if he or she does not improve, he or she will be terminated. The VE testified that a person with moderate limitations in all of the areas added to the hypothetical by the ALJ would likely receive a job performance evaluation of "needs improvement," and would be terminated if his or her performance did not improve. R. at 117.

### E.  ALJ's decision

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ determined that Plaintiff had not performed disqualifying work since the alleged onset date and found that Plaintiff's colitis and depression and/or anxiety constituted severe impairments within the meaning of the regulations. The ALJ concluded that the objective medical evidence established that Plaintiff's severe conditions did not meet the requirements of a listing level physical or mental impairment or combination of impairments during any relevant period. According to the ALJ's decision, Plaintiff retained the "physical RFC to perform and sustain almost the full range of light work throughout the relevant time." R. at 44. The ALJ determined that Plaintiff retained the "mental RFC to perform and sustain simple, unskilled work, and that her

current mental RFC is somewhat better." R. at 44. With regard to Plaintiff's functional capabilities

in a work setting, the ALJ made the following finding:

> not significantly limited in the ability to understand, remember, or carry out instructions, in the ability to make judgments on simple work-related decisions, in the ability to interact appropriately with the public, supervisors, co-workers, or to respond appropriately to changes and a routine work setting. She is and has been moderately limited in the ability to respond appropriately to work pressures in usual work settings.

R. at 44. The ALJ found that Plaintiff lacked the mental RFC to perform and sustain her past work.

The ALJ determined that Plaintiff was capable of making a successful adjustment to work that exists

in significant numbers in the national economy, including work as a statement clerk, surveillance

monitor, mail sorter, library clerk, advertising clerk, clerical checker, and sorter.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and

indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will only

reverse if the findings are not supported by substantial evidence or if the ALJ has applied an

erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395

F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the

evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d

at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial

review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security

Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported

by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535,

539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is

committed by the Commissioner, then the "court must reverse the decision regardless of the volume

of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, her analysis of the evidence in order to allow the

reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the

important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not

required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis

must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v.*

*Halter*, 245 F.3d 881, 888 (7th Cir. 2001) . The ALJ must build an "accurate and logical bridge

from the evidence to her conclusion so that, as a reviewing court, we may assess the validity of the

agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*,

362 F.3d 995, 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689

(7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a

"disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

To be found disabled, the claimant's impairment must not only prevent her from doing her previous

work, but considering her age, education, and work experience, it must also prevent her from

engaging in any other type of substantial gainful activity that exists in significant numbers in the

economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry

to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 404.1520(a)(4).  The steps are:

(1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe?

If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.


(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the

regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry

proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work?  If yes, the claimant is not

disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity,

age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied;

if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *see also Scheck v. Barnhart*, 357

F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In her opening brief, Plaintiff proffers the following arguments for remand: (1) the ALJ failed to properly question the VE, failed to give an appropriate hypothetical question to the VE as required by SSR 00-4p, and failed to rely on the VE's testimony; (2) the ALJ failed to give appropriate weight to Plaintiff's physicians' opinions and failed to properly analyze the physicians' opinions; and (3) the ALJ failed to apply the "special technique" to Plaintiff's mental impairments as required by 20 C.F.R. § 416.920a.

### A.  VE questioning and SSR 00-4p

Plaintiff argues that the ALJ committed three errors related to the VE. First, Plaintiff contends that the ALJ failed to ask the VE whether her testimony was consistent with the DOT. Second, Plaintiff argues that the ALJ erred because she failed to provide a sufficient hypothetical question to the VE. Third, Plaintiff argues that the ALJ erred by not relying on the VE's testimony. Plaintiff argues that all of the ALJ's failings with respect to the VE are sufficient bases to remand this matter. The Commissioner argues that any flaws in the ALJ's questioning of the VE are harmless errors and should not result in this matter being remanded.

1.      *VE questioning and SSR 00-4p*

SSR 00-4p requires an ALJ who takes testimony from a VE about the requirements of a

particular job to determine whether that testimony is consistent with the DOT.  Specifically, SSR

00-4p requires:

> When a VE or VS provides evidence about the requirements of a job or occupation,
> the adjudicator has an affirmative responsibility to ask about any possible conflict
> between that VE or VS evidence and information provided in the DOT.  In these
> situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information
> provided in the DOT; and if the VE's or VS's evidence appears to conflict with the
> DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704 at *4.  In *Prochaska v. Barnhart*, the ALJ took testimony from the

VE as to whether a hypothetical person with certain limitations could meet the requirements of

various jobs, but the ALJ failed to ask the VE if his testimony was consistent with the DOT.  *See*

454 F.3d 731 (7th Cir. 2006).  The plaintiff argued that the jobs listed by the VE in response to the

hypothetical were inconsistent with his limitations and did not match the DOT.  *See id*. at 736.  The

United States Court of Appeals for the Seventh Circuit held that SSR 00-4p requires the ALJ to

determine whether the VE's testimony is consistent with the DOT and remanded the case on that

issue.  *See id*. at 735.  The Court explained that it is the responsibility of the ALJ to resolve

inconsistencies between the VE's testimony and the DOT.  *See id*. at 736.

Here, the ALJ took testimony from the VE as to whether certain job requirements were

compatible with Plaintiff's limitations, but the ALJ did not ask whether the VE's testimony

conflicted with the DOT.  The ALJ found Plaintiff capable of performing the following jobs:

statement clerk, surveillance monitor, mail sorter, library clerk, advertising clerk, clerical clerk, and

sorter.  Plaintiff contends that the VE's testimony was in conflict with the DOT.  She points out that

16

the VE testified that the library clerk job is unskilled, but the DOT classifies the library clerk job as semi-skilled with an SVP of 3.[6]   Additionally, she contends that  the VE's testimony that a surveillance monitor only requires "superficial" interaction with other people conflicts with the DOT because the DOT states that a surveillance monitor must deal with people and work under specific instructions.

The Commissioner concedes that the ALJ failed to question the VE regarding the consistency of her testimony with the DOT.  The Commissioner attempts to explain away the ALJ's failure by stating that it was a harmless error that would not affect the ALJ's final conclusion that Plaintiff could perform work in the national economy.  However, it is the ALJ's responsibility to determine whether the VE's testimony is consistent with the DOT, and if it is not consistent, to find out what the inconsistencies are.  The ALJ's failure to question the VE as to whether her testimony was inconsistent with the DOT is alone a sufficient basis to remand.  It is not the Court's role to resolve alleged inconsistencies.

Although she was not required to do so, Plaintiff has shown several examples of inconsistencies between the VE's testimony and the DOT.  The inconsistencies in this case are the type that the ALJ is required to resolve with the help of the VE.  The burden imposed by SSR 00-4p is not onerous and would have likely taken the ALJ little time to satisfy.  Following the requirements of SSR 00-4p would have allowed the ALJ an opportunity to resolve any inconsistencies at the hearing stage, rather than have the parties and the Court engage in an analysis years later.  However, the ALJ failed to do so and the Court remands this matter and instructs the ALJ to question whether

---

[6]The Dictionary of Occupational titles lists a Specific Vocational Preparation or "SVP" level for each described occupation.  Skill definitions are listed in 20 C.F.R. § 416.968: unskilled corresponds with an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9.

the job requirements identified by the VE are consistent with the DOT, and if they are inconsistent, to resolve those inconsistencies.

2.      *Hypothetical question*

Plaintiff also contends the ALJ erred by failing to provide a sufficient hypothetical question to the VE.  Plaintiff argues that the ALJ's failure to include Plaintiff's limitation to simple, unskilled work in the hypothetical offered to the VE makes the VE's response unreliable.  The Commissioner admits that the ALJ did not include a limitation to simple, unskilled work in her hypothetical but argues that this failure constitutes harmless error.  The Commissioner contends that Plaintiff could perform two of the jobs listed by the VE, surveillance monitor and mail sorter, because they are classified as simple, unskilled work and exist in significant numbers in the economy.

A VE provides testimony with regard to a claimant's ability to perform work "in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work."  20 C.F.R. § 416.960(b)(2).   The testimony of a VE must be given in response to a hypothetical question that is supported by the medical evidence in the record.  *See Young*, 362 F.3d at 1005; *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).  When an ALJ relies on the testimony of the VE, the question posed to the VE must incorporate all relevant limitations from which the claimant suffers.  *See Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).  "Otherwise, the vocational testimony will not reveal whether there are jobs in the national economy that a person like the claimant could perform, and if so, how many."  *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003).

In this case, the ALJ found that Plaintiff had the mental RFC to perform simple, unskilled work.  Further, the ALJ found that Plaintiff was moderately limited in her ability to respond appropriately to work pressures in usual work settings.  The ALJ included this moderate limitation in her hypothetical to the VE.  However, the ALJ did not include the limitation to simple, unskilled work in any of her hypothetical questions to the VE.

Plaintiff relies on *Kasarsky*, in which the Seventh Circuit held that the ALJ committed error by failing to incorporate the plaintiff's deficiencies in concentration, persistence, and pace, despite having adopted this limitation in the decision.  *See* 335 F.3d at 543.  However, *Kasarsky* does not support Plaintiff's contention that the ALJ must include the type of work that Plaintiff can perform in her hypothetical to the VE.  Rather, *Kasarsky* requires that the ALJ include all physical and mental limitations on which the RFC is based in his or her hypothetical to the VE.  *See id*.

In this case, the ALJ found that Plaintiff was moderately limited in her ability to respond appropriately to work pressures in usual work settings and she included this limitation in her hypothetical to the VE.  Plaintiff does not cite any authority to support the contention that the ALJ is required to include the type of work, in this case, simple, unskilled work, in the hypothetical.   In fact, determining the type of work that a claimant can perform falls squarely within the VE's responsibilities.  *See id*. at 543.  Accordingly, the Court finds that the ALJ did not commit legal error by failing to include a limitation to simple, unskilled work in her hypothetical question to the VE.

3.      *Reliance on VE testimony*

Plaintiff argues that according to the VE's testimony, the one moderate limitation included in the ALJ's mental RFC finding would prevent Plaintiff from sustaining competitive employment. This contention is incorrect according to the VE's testimony.  The VE testified that a hypothetical

person with Plaintiff's moderate limitation in the ability to respond appropriately to work pressure in the usual work setting would be able to find a job and that there are several occupations that exist in significant numbers in the regional economy that someone with Plaintiff's mental RFC could perform and sustain. While the VE testified that a person with Plaintiff's moderate limitation may have difficulty sustaining competitive employment, the VE did not testify that such a person could not sustain competitive employment. In fact, the VE listed several occupations that Plaintiff could perform and sustain with this limitation. The VE supported her testimony by stating that she had reviewed the record and based her testimony on the hypothetical questions that the ALJ provided. Thus, the ALJ's finding is based on substantial evidence, and therefore, will not be disturbed.

### B.  Analysis of physicians' opinions

Plaintiff argues that the ALJ failed to give appropriate weight to and properly analyze Plaintiff's physicians' opinions. Specifically, Plaintiff argues that the ALJ did not provide a sufficient explanation for relying on a portion of Dr. Nelson's opinion and disregarding the rest; incorrectly found that Plaintiff had the mental RFC to sustain work; failed to give a sufficient explanation for relying on a portion of Dr. Andrews' opinion and not crediting the remaining findings; and failed to sufficiently justify relying on a portion of Dr. Vora's findings and not crediting the doctor's remaining findings. The Commissioner argues that the ALJ properly considered the physician opinions of record.

1.     *Dr. Nelson*

First, Plaintiff argues that the ALJ erred by not crediting the entire opinion of consulting physician Dr. Allan Nelson, after giving a portion of his opinion significant weight. In support of her argument, Plaintiff relies on *Herron*, 19 F.3d at 333. In *Herron*, the Seventh Circuit held that

20

an ALJ may not select and discuss only the evidence that favors her ultimate conclusion.  *See id*. at 333.  Rather, the ALJ must base her decision on consideration of all the relevant evidence, and she must articulate, at some level, her analysis of that evidence.  *See id*.  Plaintiff argues that the ALJ's failure to account for certain moderate limitations contained in Dr. Nelson's findings is significant because, based on the VE's testimony, Plaintiff would be precluded from performing certain types of work if she had moderate limitations in those areas.

On August 6, 2001, Dr. Nelson completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) and found that Plaintiff had moderate limitations in four areas: ability to interact appropriately with (1) the public; (2) supervisor(s); (3) co-workers; and (4) ability to respond to work pressures in a usual work setting.  The ALJ gave significant weight to Dr. Nelson's opinion that Plaintiff is moderately limited in her ability to respond appropriately to work pressure in a usual work setting but did not adopt the remaining three limitations.

On February 14, 2003, consulting physician Dr. Vora conducted a psychiatric evaluation of Plaintiff.  Dr. Vora diagnosed Plaintiff with panic disorder with agoraphobia and an adjustment disorder with depression.  Based on these diagnoses, Dr. Vora concluded that Plaintiff was moderately limited in one area: ability to appropriately respond to work pressures in the usual work settings.

The Court finds that based on the opinion of consulting physician Dr. Vora, the ALJ reasonably adopted only one of the four limitations found by consulting physician Dr. Nelson.  The ALJ explained, "[i]n comparing [the reports of Drs. Nelson and Vora], I also note that the claimant apparently continued to improve, over time, in her mental ability to sustain work."  R. at 39.  This statement evinces the ALJ's consideration of both doctor's opinions and supports her conclusion that

21

Plaintiff had improved.  Further, the record shows that Dr. Vora examined Plaintiff eighteen months after Dr. Nelson.  Dr. Vora had the consultative advantage to review the earlier opinions of Drs. Nelson and Andrews.  The ALJ's adoption of one moderate limitation in her mental RFC opinion is supported by her reliance on the more recent and informed opinion of Dr. Vora.  Given the passage of time and fact that Dr. Vora reviewed the reports of Drs. Nelson and Andrews, it cannot be said, as Plaintiff contends, that the two doctors were examining the same medical evidence and came to different conclusions.  *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (pointing out that when assessing conflicting medical evidence, an ALJ must decide, based on several considerations, which doctor to believe).  The ALJ weighed the evidence and reasonably concluded that based on the two opinions to which she gave significant weight that Plaintiff had one moderate limitation.  The Court finds that the ALJ's conclusion that Plaintiff suffered from one moderate mental limitation is supported by substantial evidence.

2.      *Effect of moderate restrictions on mental RFC*

Plaintiff argues that the ALJ incorrectly found that even if Plaintiff had "additional limitations in her mental RFC [in addition to the limitation to respond appropriately to work pressures,] prior to her consultative exam by Dr. Vora, claimant nevertheless had the mental RFC throughout the period in question to perform and sustain simple, unskilled work...."  R. at 47. Plaintiff contends that this finding is inconsistent with the VE's testimony and therefore exhibits deep, logical flaws amounting to error.  Plaintiff argues that the VE's testimony precluded the ALJ from finding that Plaintiff had the mental RFC to perform simple, unskilled work.  However, the VE opined that a person with a moderate limitation to respond appropriately to work pressures would be able to perform work as a clerk, surveillance monitor, mail sorter, or advertising clerk.

22

In the previous section of this opinion, the Court determined that the ALJ reasonably concluded that Plaintiff only suffered from one moderate limitation based on the opinions of Drs. Nelson and Vora. The ALJ's mental RFC included one moderate limitation, which the VE considered and found that Plaintiff would be able to sustain other work in the economy. Thus, Plaintiff's argument that she could not work with the three other moderate limitations included in Dr. Nelson's report is not supported by the evidence of record and is unavailing.

3.      *Dr. Andrews*

Plaintiff next argues that the ALJ gave significant weight to portions of treating physician Dr. Andrews' opinion, but erred by disregarding the remainder of Dr. Andrews' opinion without explanation. An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ is able to "minimally articulate[] [her] reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Clifford*, 227 F.3d at 871). An ALJ can reject a treating physician's opinion only for reasons supported by the record, the opinion of a non-treating physician alone is not enough. *Gudgel*, 345 F.3d at 470 (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)). Remand may be appropriate if the ALJ failed to give an adequate explanation of why the treating physician opinion was not entitled to controlling weight. *See Clifford*, 227 F.3d at 871; *Liscano v. Apfel*, 230 F.Supp.2d 871, 887-88 (N.D. Ind. 2002).

Dr. Andrews opined that Plaintiff's health problems, personal circumstances, and stress related to her divorce made it difficult for Plaintiff to work during the early part of 2000. Additionally, Dr. Andrews opined that Plaintiff would benefit from time off from work to deal with

her mental health issues and that she was too depressed and too anxious to function at her job.  The ALJ mentioned Dr. Andrews' findings regarding Plaintiff's mental health condition in early 2000 but did not reference the findings about Plaintiff's need for time off from work.

A close reading of the ALJ's decision reveals that the ALJ gave significant weight to only a portion of Dr. Andrews' opinion.  The ALJ limited her reliance on Dr. Andrews' opinion, stating, "I give significant weight to the opinion of Dr. Andrews, however, *that* claimant's personal circumstances, including her health problems and stress related to her divorce, made it difficult for claimant to sustain work during the early part of calendar 2000."  R. at 39  (emphasis added). Plaintiff again relies on *Herron* for support, in which in the Seventh Circuit held that the ALJ is required to articulate reasons for accepting or rejecting entire lines of evidence.  *See* 19 F.3d at 333. Here, the ALJ articulated her reason for not giving Dr. Andrews' entire opinion controlling weight by stating "[b]ecause they did not prepare the type of detailed function-by-function physical or mental RFC opinion [that] is required by the Regulations, I cannot give controlling weight to the very general opinions of claimant's treating physicians or treating psychologist."  R. at 39.  This explanation provides a legitimate basis, grounded in the medical record, for the ALJ's conclusions and allows the Court to trace the path of the ALJ's reasoning.  While the ALJ's language could have been more clear, the Court finds that the ALJ sufficiently articulated her reason for rejecting a portion of Dr. Andrews' opinion.

4.     *Dr. Vora*

Plaintiff contends that the ALJ gave significant weight to a portion of Dr. Vora's opinion, but erred by not crediting the rest of Dr. Vora's opinion without explanation.  Plaintiff contends that the ALJ erred by not mentioning that Dr. Vora diagnosed Plaintiff with agoraphobia in her analysis.

24

To support her claim, Plaintiff relies on *Indoranto v. Barnhart*, 374 F.3d 470 (7th Cir. 2004).  In *Indoranto*, the plaintiff applied for disability benefits contending that she was disabled due to impairments sustained in a car accident.  The court held that the ALJ committed error by (1) failing to include the plaintiff's headaches and blurred vision, which were documented in the reports of two doctors and in the plaintiff's testimony at hearing, in a hypothetical posed to the VE and (2) failing to consider how the impairments affected the plaintiff's ability to sustain employment.  *See id.* at 474.

Plaintiff contends that her case is analogous to *Indoranto* because in this case, the ALJ did not mention Plaintiff's agoraphobia in her analysis.  However, *Indoranto* is not analogous to Plaintiff's situation.  The ALJ in *Indoranto* failed to consider some of the claimant's symptoms.  Here, Dr. Vora found that Plaintiff suffered from one moderate limitation: ability to respond appropriately to work pressure in a usual work setting.  Dr. Vora's examination of Plaintiff led to this finding.  Dr. Vora's examination of Plaintiff also led to his diagnosis that Plaintiff suffered from agoraphobia.  After examining Plaintiff, Dr. Vora reduced his findings to a mental RFC opinion form.  The ALJ adopted Dr. Vora's opinion memorialized in the RFC form, including the moderate limitation, which incorporated the agoraphobia diagnosis.  Therefore, the Court finds that by adopting Dr. Vora's findings, the ALJ gave consideration to the incorporated agoraphobia diagnosis.

In her reply brief, Plaintiff also relies on *Prak v. Chater*, 892 F.Supp. 1081 (N.D. Ill. 1995). In *Prak*, the court found that the ALJ committed error by finding that the record did not support a diagnosis of post traumatic stress disorder, when in fact, the record did support such a diagnosis. *See id.* at 1087.  *Prak* is also distinguishable from the instant case.  Here, the ALJ did not reject Dr. Vora's diagnosis of agoraphobia.  Rather, the ALJ mentioned this diagnosis in her assessment of the

medical evidence at step 3, stating that "Dr. Vora diagnosed panic disorder with agoraphobia ..."
R. at 33.  Therefore, Plaintiff's reliance on *Prak* is inappropriate and the Court finds that the ALJ
did not commit legal error.

### C. Special technique

Finally, Plaintiff argues that the ALJ failed to use the "special technique" required by 20
C.F.R. § 416.920a(c)(2) when she evaluated Plaintiff's mental impairments.  The special technique
requires the ALJ to first evaluate a claimant's "pertinent symptoms, signs, and laboratory findings
to determine whether [the claimant has] a medically determinable mental impairment."  20 C.F.R.
§ 416.920a(b)(1).  Once the ALJ determines that the claimant has a medically determinable mental
impairment, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate
the presence of the impairment(s) and document [such] findings in accordance with paragraph (e)
of this section."  *Id*.

Next, the ALJ "must rate the degree of functional limitation resulting from the impairment(s)
in accordance with paragraph (c) of this section and record [the] findings as set out in paragraph (e)
of this section."  20 C.F.R. § 416.920a(b)(2).  In rating the degree of functional limitation, the ALJ
must consider "all relevant and available clinical signs and laboratory findings, the effects of [the]
symptoms, and how [the claimant's] functioning may be affected by factors including, but not
limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R.
§ 416.920a(c)(1).  The ALJ rates the degree of limitation based on the extent to which the
impairment interferes with the ability to function independently, appropriately, effectively, and on
a sustained basis.  The ALJ rates four broad functional areas: activities of daily living; social
functioning; concentration, persistence, or pace; and episodes of decompensation.  *See* 20 C.F.R.

§ 416.920a(c)(3). In the first three areas, the ALJ utilizes a five-point scale: none, mild, moderate, marked, and extreme, and in the fourth area, the ALJ uses a four-point scale: none, one or two, three, four or more. *See id.* "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.*

The special technique is to be documented in the ALJ's decision. *See* 20 C.F.R. § 416.920a(e). More specifically:

> At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.* In her decision, the ALJ first found that Plaintiff suffered from severe impairments of ulcerative colitis and depression and/or anxiety. However, the ALJ concluded that these impairments were not of listing-level severity during the relevant period.

Plaintiff argues that the ALJ failed to comply with requirements of 20 C.F.R. § 416.920a because she did not make specific findings regarding Plaintiff's mental limitations under the four categories listed in the regulations: activities of daily living; social functioning; the ability to maintain concentration, persistence, and pace; and episodes of decompensation. According to Plaintiff, the ALJ attempted to "somehow piece together an analysis under the 'special technique[,]'" which is insufficient to comply with the regulations. Pl.'s Reply at 10. The Commissioner argues that the ALJ completed the requisite analysis because she found that Plaintiff had "relatively normal" activities of daily living and social activities, she was not significantly limited in her ability to interact with others, and had no episodes of decompensation. Def.'s Brief at 11-13; R. at 33, 44.

27

The Commissioner also points to the ALJ's finding that Plaintiff's symptoms would not distract her to the point that she would be off-task and non-productive in the competitive workplace. R. at 44. According to the Commissioner, this statement closely tracks the regulations' definition of "concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C)(3). The regulations define "concentration, persistence or pace" as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks found in work settings." *Id*. Finally, the Commissioner argues that the ALJ effectively found that Plaintiff was moderately impaired in concentration, persistence or pace because she found that Plaintiff's mental impairments were severe. The Commissioner argues that these statements together, while they do not parrot the language of the regulations, closely track it, and therefore, remand is improper.

Despite the Commissioner's arguments, the Court finds that the ALJ did not document the special technique as required by 20 C.F.R. § 416.920a. Plaintiff cites *Keys v. Barnhart*, a case in which the court held that the ALJ's analysis did not comply with the special technique because he failed to include a specific finding for each of the four broad functional areas described in 416.920a. *See* 430 F.Supp.2d 759, 772 (N.D. Ill 2006). Instead, the ALJ "simply outlined the medical evidence related to claimant's mental impairments" and concluded that the claimant's mental RFC was not significantly limited. *Id*. The court held that "because the ALJ failed to follow or document the 'special technique[,]'" it could not find that the ALJ's mental RFC determination was free from legal error or supported by substantial evidence and remanded the case. *Id*.

Similarly, in this case, the ALJ failed to follow the requirements of the special technique because she did not include a specific finding for each of the four broad functional areas. The ALJ

28

mentioned that Plaintiff did not suffer any episodes of decompensation and that Plaintiff had relatively normal daily living and social activities.  However, the regulations require the ALJ to decide the degree of limitation in each of the broad functional areas according to the scales listed in the regulations.  The ALJ failed to do so.  Further, the ALJ failed to address the broad functional area of concentration, persistence and pace.  The regulations are clear that the ALJ must rate the degree of limitation in each of the four broad functional areas, and must do so based on the scales provided in the regulations.  By not using the prescribed scale for two of the four criteria, and not addressing one criterion, the ALJ failed to comply with the regulations.  Accordingly, this case is remanded for the ALJ to analyze Plaintiff's mental impairments in compliance with the special technique outlined in the regulations.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ failed to comply with SSR 00-4p when questioning the VE and failed to comply with the special technique when analyzing Plaintiff's mental impairments, as required by 20 C.F.R. § 416.920a.  Therefore, the Court **GRANTS** the Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE 16] and **REMANDS** this matter for further proceedings consistent with this Order.

So ORDERED this 10th day of September, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:  All counsel of record